# Corbin et al. *v.* Millers Mutual Fire Insurance Company of Harrisburg, Penna., Appellant.

*Fire insurance—Application—Answers to questions—Misrepresentations—Flour mill—Character of power used — Inspection — Breach of warranty—Estoppel—Judgment for defendant n. o. v.*

1. In an action on a fire insurance policy covering a flour mill operated by water power with a gasoline engine as auxiliary power, a verdict should have been directed for the defendant where it appeared that to specific questions in the application plaintiff answered that only water power was used; that while defendant's secretary actually inspected the premises and saw the gasoline engine the application was not received by him until several months thereafter, and that before the policy was issued he communicated with the plaintiff stating that an additional rate was chargeable if gasoline power was also employed, and that with full knowledge of the difference in the rates plaintiff remitted the premium chargeable if water power only was used.

2. In such case the company was justified in inferring from applicant's written declaration and from the payment of the lower premium that only water power was used, that plaintiff intended to represent that the use of the gasoline engine in operation at the time of the inspection by defendant's secretary had been aban-

doned, and defendant was not estopped by reason of such inspection from setting up the breach of warranty of the truth of plaintiff's answers to the questions in the application.

Argued May 15, 1917.   Appeal, No. 251, Jan. T., 1916, by defendant, from judgment of C. P. Mifflin Co., May T., 1915, No. 107, on verdict for plaintiffs in case of C. G. Corbin and R. M. Sassaman trading as High Falls Milling Company v. Millers Mutual Fire Insurance Company of Harrisburg, Pennsylvania.   Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and WALLING, JJ. Reversed.

Assumpsit on a fire insurance policy.   Before BAILEY, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $3,714.08 and judgment thereon.   Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant (2), and in refusing defendant's motion for judgment n. o. v. (4).

*Rufus C. Elder,* for appellant.—The misrepresentation as to the character of the power used in plaintiff's mill rendered the policy void: United Brethren Mutual Aid Society of Penna. v. White, 100 Pa. 12; Wall v. Royal Society of Good Fellows, 179 Pa. 355; Blooming Grove Mutual Fire Ins. Co. v. McAnerney, 102 Pa. 335; Home Mutual Life Association of Penna. v. Gillespie, 110 Pa. 84; Smith v. Northwestern Mutual Life Ins. Co., 196 Pa. 314; Commonwealth Mutual Fire Ins. Co. v. Huntzinger, 98 Pa. 41; March v. Metropolitan Life Insurance Co., 186 Pa. 629.

*A. Reed Hayes,* with him *L. J. Durbin,* for appellees.— Where at the time of the issuing of an insurance policy the company knows or should have known that one of

the conditions is inconsistent with the facts, and the insured has been guilty of no fraud, the company is estopped from setting up the breach of such condition: Caldwell v. Fire Association of Philadelphia, 177 Pa. 492; Bateman v. Lumberman's Ins. Co., 189 Pa. 465; Damms v. Humboldt Fire Ins. Co., 226 Pa. 358; Clymer Opera Co. v. Flood Mutual Fire Ins. Co., 238 Pa. 137; Central Market St. Co. v. North British & Mercantile Ins. Co. of London, 245 Pa. 272.

OPINION BY MR. JUSTICE POTTER, June 30, 1917:

In this action of assumpsit the plaintiffs sought to recover upon a policy of fire insurance. The defense was breach of warranty. The written application for insurance, presented by plaintiffs, contained the following questions: "Is steam power, water power, or what other power is used?" This was answered, "Water." "If gasoline power is used, then describe the location of the engine, gasoline storage tank, spark igniter, etc." No answer was made to this question. The application contained a warranty of the truth of the answers to all questions and an agreement that they should be incorporated in and form part of the policy to be issued. In addition it was provided that the company should not be bound by any act or statement of its agent, or any statement to such agent, restricting or waiving its rights or varying the written contract, unless it was inserted in the application, endorsed on the policy or otherwise acknowledged in writing by the company's secretary. The property insured was a flouring mill operated by water power, with a sixteen-horse power gasoline engine as auxiliary power. It appeared from the evidence that the gasoline engine was used to a considerable extent after the insurance was obtained, and that it was operated until eleven o'clock on the evening before the fire, which occurred at two o'clock in the morning. The loss admittedly exceeded the amount of the insurance. It was shown that in February, 1914, more than three

months before the insurance was actually placed, the secretary of defendant company visited the mill at the request of plaintiffs with reference to placing fire insurance thereon. At that time he saw that there was a gasoline engine in the mill. After examining the property he left an application blank with plaintiffs, and gave them the rates, one being for water power only, and the other an increased rate for water power and gasoline.

More than three months later, on June 5, 1914, plaintiffs sent, to the office of the defendant company, the application for insurance referred to above. It was not accompanied by a check, and the secretary replied to plaintiffs on June 9, 1914, in part as follows: "From the fact that so much time intervened between my visit to the mill and the filing of the application for insurance, I really forget the basis rate which I named while on the premises. I am inclined to believe, however, that it was $4.50, and that you had auxiliary power, either gasoline or steam, while in the application you make no mention of any but water power. Therefore, will say that if there is no other than water power, we would be willing to write the insurance on the basis of a cash deposit of $20 per one thousand dollars insurance and an actual cost of approximately $18 per one thousand dollars. of insurance. A by-law of the company stipulates for prepayment, therefore you should remit the amount of the deposit along with your answer."

The premium for the amount of insurance requested, at the rate named in case water power only was used, was $740 for the period of five years. If in addition gasoline power was used, the premium would have been $832.50. According to the by-laws, a cash deposit of ten per cent. of the premium was required. With full knowledge of the difference in the rates, the plaintiffs in reply sent a check for $75, being one dollar more than the amount of the deposit required for the premium for the use of water power alone. Defendant then sent

them the policy, and a check for one dollar, the excess of the cash deposit.

That there was a misrepresentation as to the use of water power only is admitted. But the trial judge was of opinion that the receipt of the insurance premium by the defendant after its secretary had seen the property, and noted the equipment, was sufficient to estop the defendant from setting up the breach of warranty. We cannot agree with this conclusion. It is true that in February the secretary saw that the mill was equipped with both water power and gasoline engine, and that he then stated the rates for the use of one or both powers. But nothing was done with respect to the insurance until June, and when the application then came in stating that water power alone was in use, the secretary replied by letter, and called attention to that fact, and stated his recollection that applicants had been using auxiliary power, either steam or gasoline, and reminded them that the lower rate was based upon the use of water power alone. Yet in the face of this plain reminder plaintiffs adhered to their statement that water power alone was in use. It was not the equipment with the gasoline engine that increased the hazard, but it was the use of that engine and the accompanying storage of gasoline as fuel for the engine upon the premises that enlarged the risk. The secretary may very well have concluded that when applicants stated in writing that water power only was used, they intended to say that the use of the gasoline engine had been abandoned. That was the only reasonable or natural inference to be drawn from the statement. The use of the power was entirely within plaintiffs' control. They were not bound to continue the use of both water power and gasoline power. They could discontinue the use of either at any time, and the defendant was not bound to discredit the statement made by applicants as to the character of the power in use some three months after the date of the inspection of the premises by defendant's secretary.

We can see in the evidence no basis for the conclusion that the company accepted the application for insurance, knowing at the time that the conditions were not as they were then represented to be by the plaintiffs. The attention of the applicants was called directly to the fact that an increased rate was required if gasoline power was used, and they were given the choice of the two rates, one conditioned upon the use of water power alone, and the other for the use of both water power and the gasoline engine.

Possessed of this knowledge, they allowed their statement to stand that water power only was to be used, and accepted the lower rate of insurance applying to the use of that power alone, and paid the appropriate premium. This action upon their part, if taken in good faith, could only be reconciled with an intention to make no further use of gasoline for auxiliary power. We find nothing in the testimony to indicate that defendant did not implicitly rely upon the warranty. On the contrary, the letter of the secretary plainly shows that it did rely upon it. Defendant said, "if there is no other than water power," etc., it would write the insurance at the rate given, implying, of course, that the use of the auxiliary gasoline power should be abandoned. The only reasonable inference that can be drawn from the testimony is that there was a wilful misrepresentation in the application, and that the use of gasoline power was concealed for the purpose of getting the insurance at the lower rate, which applied to the use of water power alone. Nor are we able to find anything in the evidence which would warrant the inference that when the defendant company received the premium and issued the policy, it had such knowledge of the misrepresentation by plaintiffs as would estop it from setting up the breach of warranty by way of defense.

The second and fourth assignments of error are sustained, and the judgment is reversed, and is here entered for the defendant.